**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

MORTGAGE ALLIANCE      :
CORPORATION,        :
            :
    Plaintiff,       :
            :    CIVIL ACTION NO.
    v.         :    2:08-CV-0164-RWS
            :
PICKENS COUNTY, *et al.*,     :
            :
    Defendant.      :

## <u>ORDER</u>

This case comes before the Court on Defendants' Motion for Summary

Judgment [121], Defendants' Motion for a Hearing [82], Defendants' Motion to

Compel Discovery [81-1], Defendants' Motion for Attorneys' Fees [81-2],

Defendants' Second Motion for a Hearing [116], Defendants' Second Motion to

Compel Discovery [109-1], Defendants' Second Motion for Attorneys' Fees

[109-2], Plaintiff's Motion for Extension of Discovery [112], and Plaintiff's

Motion to Quash [114].  After reviewing the record, the Court enters the

following order.

As an initial matter, because the Court is able to decide the pending

motions based upon the submissions of the parties, Defendants' Motion for a

Hearing [82] and Defendants' Second Motion for a Hearing [116] are

**DENIED**.

## Background[1]

This case concerns Plaintiff's attempt to develop a subdivision on a 180

acre parcel of land located in Pickens County, Georgia.  Leon Bridges

("Bridges") is the CEO of Plaintiff Mortgage Alliance Corporation ("MAC").

Bridges's efforts to develop this tract of land began in 2000.  His initial attempt

to develop the land did not progress beyond the exploratory stage.  The biggest

obstacles to developing the parcel were water and sewage issues, particularly

soil not conducive to the use of septic tanks.  In the fall of 2003, after learning

that Pickens County had entered an agreement with a neighboring city for the

provision of water, Bridges renewed his interest in the 180 acre parcel of land.

In December 2003, Bridges put the property under contract for $2.3 million and

began conducting due diligence to determine the feasibility of developing it.

---

[1] The background section primarily reflects Plaintiff's recitation of the facts as
set forth in Plaintiff's Brief in Opposition to Summary Judgment [151] at 2-24. In
resolving a motion for summary judgment, the court must view all evidence and draw
all reasonable inferences in the light most favorable to the non-moving party.  Patton
v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002).

AO 72A
(Rev.8/82)

In January 2004, Pickens County's Director of Planning and Development, Defendant Norman Pope ("Pope"), was reported as saying that Pickens County would encourage developers to use private sewer systems and would consider variances to allow smaller lot sizes. Also, in January 2004, then-County Commissioner Billy Newton re-adopted the "Conservation Subdivision" ordinance that allowed developers to utilize smaller residential lots if open space was sufficiently preserved. In that same month, Bridges prepared a memo for Pope outlining the proposed development for the 180 acre parcel of land he had purchased. His plans, for what became known as "Silverstone," envisioned a 240 lot Conservation Subdivision with residences on .75 acre lots serviced by public water and private sewer. In February, Bridges met with Larry Coleman ("Coleman"), Utilities Director for the Water Authority Board of Pickens County, to discuss the proposed subdivision and confirm the availability of water. Bridges believes that at that meeting he secured Coleman's commitment on behalf of Pickens County to provide water for Silverstone.

Bridges proceeded to engage Scott Merrell ("Merrell") to serve as the Professional Engineer for the Silverstone development and Jerry Wickliffe

3

("Wickliffe") to design, construct, and maintain the private sewer plant once it was built.  Bridges and Wickliffe met with Pope and Coleman at the site of the proposed development in February 2004.  Bridges discussed his plans to develop a 240 lot subdivision that would utilize a private sewer system with a 63,000 gallons per day capacity.  A subsequent meeting was held in May 2004.  At that time, Bridges was informed that the Georgia Department of Natural Resources, Environmental Protection Division ("EPD") needed to approve the sewer system because it surpassed the approval capacity of the Pickens County Health Department.  Bridges requested Pope's unofficial approval to proceed with the construction plan.[2]  Pope told Bridges that the project appeared feasible, subject to EPD approval, and instructed Bridges to submit the sewer plans to Coleman and EPD.  Following this meeting, Bridges believed that Pope had unofficially approved the plans for Silverstone, subject to EPD approval. On September 3, 2004, Bridges submitted to Pickens County the Preliminary

---

[2] Section 38-1 of the Pickens County Land Development Standards allows the County to provide a pre-application review of proposed developments, which consists of "an informal stage of subdivision review at which the developer may make known preliminary plan proposals and the county may respond and/or advise the developer concerning the subdivision regulations."

4

Plat for Silverstone that laid out a Conservation Subdivision consisting of 240, .75 acre lots.

In June 2004, the Mountain District Office of the Georgia Department of Natural Resources wrote to Coleman to advise that the water plan for Silverstone had been approved for 240 connections.  On June 28, 2004, Bridges submitted the sewer plans to EPD and Coleman.  EPD requested additional information from Wickliffe and advised that a Trust Indenture would be required.  In December 2004, EPD issued its Notice of Intent that it was ready to approve the submitted sewer plans.  That same month, Pickens County informed EPD that it would not serve as the trustee of the on-site private sewer system for Silverstone.  In April 2005, the Silverstone Homeowners Association entered into a trust agreement with Water Wise, Inc.

While Bridges was attempting to obtain approval for Silverstone in 2004, election campaigning for the sole county commissioner seat of Pickens County was under way.  Newton lost his bid for re-election to Defendant Robert Jones ("Jones") in the July 20, 2004 primary election.  Jones won a narrow victory in the run-off election held on August 10, 2004, and took office on January 2, 2005.  The parties dispute the importance to the election of the growth of

5

Pickens County generally and the development of Silverstone specifically. Bridges asserts that he was told by Pope, that the office of Planning and Development was receiving daily phone calls concerning the Silverstone project. Bridges asserts that as a result, he delayed the submission of the preliminary plat until after the election, submitting it on September 4, 2004.

On February 7, 2005, Jones issued a resolution declaring a moratorium on "sewer systems which are not owned by Pickens County for a period of six (6) months from the date of this ordinance for the purposes of developing adequate regulation of the above described services." (Ex. 21, Plaintiff's Appendix to Summary Judgment Response ("Pl.'s Appx."), Dkt. No. [153]). The moratorium was eventually extended multiple times covering the period from February 7, 2005 to November 7, 2005, and again from November 20, 2005 to August 8, 2006. Plaintiff asserts that this moratorium was part of an effort to delay approval of Silverstone. Plaintiff maintains that EPD stood ready to approve the Silverstone sewer plans by January 5, 2005, but in a further effort to hinder the project, Jones refused to sign off on the Report of Technical Review for the soil and erosion plan and as an additional step not required by EPD, insisted that Plaintiff obtain a Land Disturbing Permit.

6

Four days after the enactment of the sewer moratorium, Rodney Buckingham ("Buckingham"), Land Development Officer of Pickens County, denied approval of the Silverstone preliminary plat, asserting various shortcomings.  Bridges maintains that he was told by Buckingham that the sewer moratorium was being applied to the Silverstone development.  Also, in a letter dated August 23, 2005, Pope wrote Bridges to inform him that approval of the Silverstone preliminary plat was contingent upon compliance with several issues, including the moratorium.  Despite this, Bridges contends that throughout the remainder of 2005 and into 2006, he was led to believe by Pickens County officials that Silverstone had been grandfathered into preexisting ordinances.  However, on August 11, 2006, he received a letter from Jones stating that Silverstone would have to comply with the current Pickens County ordinances.  The then-existing ordinance had been adopted on August 8, 2006 and required a minimum lot size of one acre for subdivisions utilizing a private sewer system.

Plaintiff filed the current action on August 7, 2008, seeking damages pursuant to 42 U.S.C. § 1983.  In Count I, the Complaint [1] alleges that the application of the sewer moratorium and the zoning ordinances in existence on

7

August 11, 2006, constituted a taking and violated the Fifth Amendment by taking Plaintiff's property without just compensation.  Count II alleges that the enactment of the sewer moratorium and its application to Silverstone was arbitrary and capricious and violated the Due Process Clause of the Fourteenth Amendment.  Count III of the Complaint asserts that the sewer moratorium and its application to Silverstone violated the Fourteenth Amendment's Equal Protection Clause, because it improperly singled out Plaintiff's development without any rational relationship to a legitimate government purpose.  In an Order [11] issued on October 1, 2008, the Court denied Defendants' Motion to Dismiss [7], but stayed Plaintiff's Fifth Amendment Claim because it was not yet ripe for consideration by the Court.  Because the state court proceedings involving Plaintiff's takings claim has not yet reached completion, it is still not ripe for review by this Court, and therefore the merits of Defendants' arguments to dismiss that claim will not be addressed.  The Court now addresses Defendants' arguments to dismiss the due process and equal protection claims.

### Discussion

**I.      Defendants' Motion for Summary Judgment [121]**

      A.      <u>Summary Judgment Standard</u>

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'"  Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (internal quotations omitted)).  Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The applicable substantive law identifies which facts are material.  Id. at 248.  A fact is not material if a dispute over that fact will not affect the outcome

9

of the suit under the governing law.  Id.  An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002).  But, the court is bound only to draw those inferences which are reasonable.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(c), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

B.     Plaintiff's Fourteenth Amendment Due Process Claim

Plaintiff's Complaint [1] alleges that the "sewer moratorium and Pickens County's subsequent insistence on consideration of Plaintiff's proposal under current requirements has no rational basis," is "arbitrary and capricious," and "Plaintiff suffered a deprivation of property that rises to a constitutional level." (Complaint, Dkt. No. [1] at ¶¶ 80-81, 84).  The Due Process Clause of the Fourteenth Amendment states "nor shall any State deprive any person of life, liberty, or property, without process of law."  U.S. CONST. amend. XIV, § 1. The Eleventh Circuit has noted that:

> The Supreme Court's interpretation of this clause explicates that the amendment provides two different kinds of constitutional protection: procedural due process and substantive due process. Cf. Zinermon v. Burch, 494 U.S. 113, 125, 110 S. Ct. 975, 983, 108 L. Ed. 2d 100 (1990).  A violation of either of these kinds of protection may form the basis for a suit under [42 U.S.C. §] 1983. Id.

McKinney v. Pate, 20 F.3d 1550, 1555 (11th Cir. 1994).  Count II of Plaintiff's Complaint is based upon substantive due process.  "The substantive component of the Due Process Clause protects those rights that are 'fundamental,' that is rights that are 'implicit in the concept of ordered liberty.'"  Id. at 1556 (quoting Palko v. Conn., 302 U.S. 319, 325, 58 S. Ct. 149, 82 L. Ed. 288 (1937)).  The

11

Supreme Court has determined that most of the rights enumerated in the Bill of Rights are fundamental as well as certain unenumerated rights, such as the right of privacy.  Id.

While the Supreme Court has deemed certain rights to be fundamental, "'the Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decision making in this uncharted area are scarce and open-ended."  Id. (quoting Collins v. City of Harker Heights, 503 U.S. 115, 125, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992)). "[A]reas in which substantive rights are created only by state law . . . are not subject to substantive due process protection under the Due Process Clause because 'substantive due process rights are created only by the Constitution.'" Id. (quoting Regents of Univ. of Mich. v. Ewing, 474 U.S. 214, 229, 106 S. Ct. 507, 88 L. Ed. 2d 523 (1985) (Powell, J., concurring)).  The Eleventh Circuit has held that the list of state-created rights includes land-use rights like zoning restrictions.  Lewis v. Brown, 409 F.3d 1271, 1273 (11th Cir. 2005) (citing Greenbriar Village, L.L.C. v. Mountain Brook, 345 F.3d 1258, 1262 (11th Cir. 2003)).

12

However, there is an exception to the general rule that substantive rights created only by state law are not subject to substantive due process protection. Where an individual's state-created rights are infringed by a legislative act, the substantive component of the Due Process Clause generally protects him from arbitrary and capricious action by the government.  Id. (citing McKinney, 20 F.3d at 1557 n.9).  The legislative nature of the act is critical, because deprivations of state-created rights as a result of executive action cannot support a substantive due process claim, not even if the government official acted arbitrarily and capriciously.  Greenbriar Village, L.L.C., 345 F.3d at 1263 (citing McKinney, 20 F.3d at 1559).  Therefore, any claim Plaintiff has under the substantive component of the Due Process Clause must be based upon a legislative action.

Plaintiff's Complaint

alleges that Pickens County, by and through Jones, violated its rights by arbitrary and capricious legislative conduct when it enacted a sewer moratorium that prohibited MAC's proposed development from moving forward.  (Complaint at ¶¶ 43, 76, 81). Enactment of the moratorium was not an "administrative application of *existing* policies."  It created a new law that was non-existent when Plaintiff submitted its preliminary plat.

13

(Pl.'s Response, Dkt. No. [151] at 28 (citation omitted)).  To the extent that Plaintiff has a  substantive due process claim it must be based on the enactment of the moratorium, because Plaintiff has not alleged any other legislative acts on the part of Defendants.[3]  Plaintiff's substantive due process claim based upon the enactment of the moratorium, however, is barred by the statute of limitations.

The moratorium was initially enacted on February 7, 2005.  (Ex. 43, Pl.'s Appx., Dkt. No. [153]).  Plaintiff's Complaint was not filed until August 7, 2008, more than three years after the enactment of the moratorium.  The parties

---

[3] The Eleventh Circuit in <u>McKinney</u> set forth a test to help distinguish executive from legislative acts:

> Executive acts characteristically apply to a limited number of persons (and often to only one person); executive acts typically arise from the ministerial or administrative activities of members of the executive branch.  The most common examples are employment terminations.
>
> Legislative acts, on the other hand, generally apply to larger segments of-if not all of-society; laws and broad-ranging executive regulations are the most common examples.

<u>McKinney</u>, 20 F.3d at 1557 n.9 (citations omitted).

Plaintiff asserts that "when Jones issued the moratorium against private sewer systems, he was not enforcing an existing zoning law, which is typically an executive act.  Wearing his legislative 'hat,' Jones created a new law."  (Pl.'s Response, Dkt. No. [151] at 31).

agree that the statute of limitations for the claims currently before the Court is two years.[4]  (Pl.'s Response, Dkt. No. [151] at 52).  If Plaintiff's substantive due process claims accrued when the moratorium was enacted, then that claim is time barred.

"The accrual date of a [Section] 1983 claim is a question of federal law that is not resolved by reference to state law," but rather is:

> governed by federal rules conforming in general to common-law tort principles. Under those principles, it is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief.

Wallace, 549 U.S. at 388.  "A violation of a substantive due process right . . . is complete when it occurs."  McKinney, 20 F.3d at 1556-57.  Plaintiff alleges that the enactment of the moratorium was arbitrary and capricious legislative conduct "that prohibited MAC's proposed development from moving forward."

---

[4] While Section 1983 provides a federal cause of action, in some respects, such as the applicable statute of limitations, it looks to the law of the State in which the cause of action arose.  Wallace v. Kato, 549 U.S. 384, 387, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007).  The statute of limitations applicable to Section 1983 actions is that which the State provides for personal injury torts.  Id. (citing Owens v. Okure, 488 U.S. 235, 249-50, 109 S. Ct. 573, 102 L. Ed. 2d 594 (1989)).  In Georgia, the applicable limitations period is two years.  O.C.G.A. § 9-3-33.

15

(Pl.'s Response, Dkt. No. [151] at 28).  Furthermore, the enactment of the

moratorium was felt by Plaintiff in a concrete way because the "*issuance* of the

sewer moratorium constituted a temporary taking on Plaintiff's land as Plaintiff

had already submitted plans for a sewer system covered by the moratorium."

(Complaint, Dkt. No. [1] at ¶ 53 (emphasis added)).  Also, "the unwarranted

delay and interference with the development of the property, [caused] the

owners [to incur] extraordinary expenses."  (Letter from Plaintiff's Attorney,

Ex. O, Def.'s Motion for Summary Judgment, Dkt. No. [121-16]).

Plaintiff's substantive due process claim accrued when the moratorium

was enacted on February 7, 2005.  Count II of Plaintiff's Complaint [1] is

therefore untimely.  Defendants' Motion for Summary Judgment is **GRANTED**

as to Count II.[5]

---

[5] Even if Plaintiff's substantive due process claim was not barred by the
applicable statute of limitations, summary judgment would still be appropriate.
Because the enactment of the moratorium neither targeted a protected class nor
implicated a fundamental right, the Court would

> apply the highly deferential rational basis test to this substantive due
> process challenge to a legislative act.  See Schwarz v. Kogan, 132 F.3d
> 1387, 1390 (11th Cir.1998) (holding substantive due process challenges
> not implicating fundamental rights are reviewed under the highly
> deferential rational basis standard). "In order to survive this minimal
> scrutiny, the challenged provision need only be rationally related to a
> legitimate government purpose." Id. at 1390-91. Under rational basis

16

C.     Plaintiff's Equal Protection Claim

Count III of Plaintiff's Complaint [1] claims that Defendants violated the

Equal Protection Clause of the Fourteenth Amendment.  Plaintiff asserts that

"[t]here was no legitimate government purpose for which the sewer moratorium

was rationally related," and that its enactment, "although facially neutral,

---

review, we first identify "a legitimate government purpose ... which the
enacting government body *could* have been pursuing." Bannum, Inc. v.
City of Fort Lauderdale, Florida, 157 F.3d 819, 822 (11th Cir.1998)
(internal quotations omitted) (emphasis in original). Second, we
determine "whether a rational basis exists for the enacting government
body to believe the legislation would further the hypothesized purpose."
Id.

Abele v. Hernando County, 161 Fed. Appx. 809, 814-15 (11th Cir. 2005).
The resolution declaring the sewer moratorium notes that "there is currently no
adequate regulation" of privately owned sewer systems in Pickens County and "the
Commissioner deems it to be in the best interest of the citizens of Pickens County to
regulate the provision of such service, in order to protect the public health, safety, and
welfare." (Ex. 43, Pl.'s Appx., Dkt. No. [153]).  Therefore, a moratorium was declared
"for the purposes of developing adequate regulation" of private sewer systems.  (Id.).
Whether the stated purpose of the moratorium reflects Defendant Jones's actual
purpose in declaring the moratorium is irrelevant, because the stated reasoning is "a
legitimate government purpose ... which the enacting government body *could* have
been pursuing." Bannum, Inc., 157 F.3d at 822 (internal quotations omitted)
(emphasis in original); see also Restigouche, Inc. v. Town of Jupiter, 59 F.3d 1208,
1214 (11th Cir. 1995) ("The proper inquiry is concerned with the *existence* of a
conceivably rational basis, not whether that basis was actually considered by the
legislative body." (internal citations and quotations omitted).  Second, a rational basis
does exist to believe that the moratorium on private sewer systems would further the
stated purpose of protecting the public health, safety, and welfare by developing
adequate regulations for such systems.

17

worked to single out Plaintiff's system and to prohibit the development of Plaintiff's property as proposed." (Complaint, Dkt. No. [1] at ¶¶ 93, 92). For the reasons set forth below, Count III of the Complaint [1] fails to present a claim that should be allowed to go forward.

The Equal Protection Clause of the Fourteenth Amendment states that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. This is not a normal equal protection case. MAC does not claim that it was discriminated against because it belongs to a protected class such as race or gender. Rather, Plaintiff's claim is based upon the "class of one" theory. This theory was first recognized by the Supreme Court in <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000) (per curiam). <u>Olech</u> held that the plaintiffs successfully stated a class-of-one claim by alleging that they were intentionally treated differently from others similarly situated and there was no rational basis for the difference in treatment. <u>Id.</u> at 565. In order for Plaintiff to successfully assert a class-of-one claim it must demonstrate that: (1) it "has been intentionally treated differently from others similarly situated;" and (2) "there is no rational basis for the difference in treatment." <u>Id.</u> at 564.

18

As an initial matter, Plaintiff's equal protection claim is not ripe and must

be **DISMISSED**.[6]  Plaintiff has admitted "that Jones never made a final

decision in this case."  (Pl.'s Response to Def.'s Statement of Material Facts,

Dkt. No. [152], at 40).[7]  In order to establish the ripeness of its equal protection

---

[6] The Supreme Court has noted that:

Ripeness is a justiciability doctrine designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." Abbott Labs. v. Gardner, 387 U.S. 136, 148-149, 87 S. Ct. 1507, 18 L. Ed. 2d 681 (1967); accord, Ohio Forestry Ass'n, Inc. v. Sierra Club, 523 U.S. 726, 732-733, 118 S. Ct. 1665, 140 L. Ed. 2d 921 (1998). The ripeness doctrine is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction," Reno v. Catholic Soc. Servs, Inc., 509 U.S. 43, 57 n.18, 113 S. Ct. 2485, 125 L. Ed.2d 38 (1993) (citations omitted), but, even in a case raising only prudential concerns, the question of ripeness may be considered on a court's own motion. Ibid. (citing Reg'l Rail Reorganization Act Cases, 419 U.S. 102, 138, 95 S. Ct. 335, 42 L. Ed. 2d 320 (1974)).

Nat'l Park Hospitality Ass'n v. Dep't of Interior, 538 U.S. 803, 807-808, 123 S. Ct. 2026, 155 L. Ed. 2d 1017 (2003).

[7] The portion of paragraph 62 of Defendants' Statement of Material Facts [121-24] that Plaintiff deemed admitted states:

Defendant Commissioner Jones never made a single decision with respect to Plaintiff's property whatsoever until his August 11, 2006 letter.  There was never a formal administrative appeal that worked its way up to Commissioner Jones' office.

claim, Plaintiff must show that a final decision was made in regards to the Silverstone development.  Executive 100, Inc. v. Martin County, 922 F.2d 1536, 1541 (11th Cir. 1991).  Because Plaintiff has admitted that no final decision was made in this case, its equal protection claim is not ripe.

Even if Plaintiff's equal protection claim was ripe, it cannot prevail on its class-of-one claim because it cannot demonstrate that "it has been intentionally treated differently from others similarly situated."  Olech, 528 U.S. at 564. First, Plaintiff's Complaint [1] likely does not satisfy the Eleventh Circuit's pleading requirements for a class-of-one claim because it fails to set forth any comparators to which Silverstone is similarly situated.  The Eleventh Circuit "has tightened the application of Rule 8 with respect to Section 1983 cases in an effort to weed out nonmeritorious claims, requiring that a Section 1983 plaintiff allege with some specificity the facts which make out its claim."  GJR Invs., Inc. v. County of Escambia, 132 F.3d 1359, 1367 (11th Cir. 1998).  With respect to a class-of-one claim, the Court is "obliged to apply the 'similarly situated' requirement with rigor."  Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1207 (11th Cir. 2007) (complaint failed to state class-of-one claim because

Plaintiff did not plead an adequate comparator); see also Douglas Asphalt Co. v. Qore, Inc., 541 F.3d 1269, 1275 (same).

Plaintiff does set forth three comparator subdivisions in its Response to Defendants' Motion for Summary Judgment. (Dkt. No. [151] at 40). However, none of the subdivisions proposed by Plaintiff are sufficiently similar to the proposed Silverstone development. The three subdivisions approved by Pickens County that Plaintiff proposes as comparators are: (1) Chimney Ridge (60 lots on 66.85 acres, all on less than 1 acre); (2) Willowcreek (45 lots on 59.14 acres, all lots except one on less than 1 acre); and (3) Big Canoe/Choctaw (97 lots on 42 acres, all on less than 1 acre). In contrast, Plaintiff's proposed Silverstone development was to include 240 lots on 180 acres. Plaintiff asserts that the difference in the number of lots or acreage is not significant, rather "[t]he important factor is the lot size that was allowed." (Pl.'s Response [151] at 40). However, the difference in lots and total acreage is significant, and those differences are not the only reason that the three subdivisions are not adequate comparators.

In Griffin, the Eleventh Circuit examined what degree of similarity was necessary for two entities to be considered "similarly situated." 496 F.3d at

21

1203.  The Court noted that

> too broad a definition of "similarly situated" could subject nearly
> all state regulatory decisions to constitutional review in federal
> court and deny state regulators the critical discretion they need to
> effectively perform their duties.  Conversely, too narrow a
> definition of "similarly situated" could exclude from the zone of
> equal protection those who are plainly treated disparately and
> without a rational basis.

Id. at 1203.  In Griffin, the Eleventh Circuit drew a distinction between the type

of one-dimensional government action involved in Olech and other regulatory

action which is "undeniably multi-dimensional, involving varied

decisionmaking criteria applied in a series of discretionary decisions made over

an extended period of time."  Id.  The Court noted that the similarity between

Olech and her neighbors was obvious because the governmental decisionmaker

had a policy that did not involve a large number of factors in its application,

with the only relevant factor being the size of the easement required in return

for connection to the municipal water supply.  Id.  In situations when

"dissimilar governmental treatment is not the product of a one-dimensional

decision-such as a standard easement or a tax assessed at a pre-set percentage of

market value-the 'similarly situated' requirement will be more difficult to

establish." Id. at 1203-04.  Approval of the development of a subdivision is not

like the one-dimensional decision presented in Olech.

　　　　In Campbell, the Eleventh Circuit noted that in order to demonstrate that

two projects are similar in the class-of-one context, the projects being compared

"must be prima facie identical in all relevant respects."  Campbell v. Rainbow

City, 434 F.3d 1306, 1314 (11th Cir. 2006).  In rejecting all of the comparators

offered in that case, the Court noted that appropriate comparators would be

essentially the same size, have an equivalent impact on the community, and

require the same zoning variances. Id. at 1316, 1316 n.8.  While Plaintiff insists

that the only relevant question is whether Pickens County approved other

subdivisions with variances to the minimum lot size requirement, Campbell

suggests that a variance is only one factor.

　　　　Defendants also note other differences between the proposed Silverstone

development and Plaintiff's comparator subdivisions.  Willow Creek and

Chimney Ridge were approved in 2001 and 2003, respectively, by former

Pickens County Commissioner William Newton.  (Def.'s Reply, Dkt. No. [160],

at 16).  Choctaw Village was approved in 2004, but was developed under a

master plan that had been in existence since 1972.  (Id. at 19).  In contrast the

sewer moratorium was imposed on February 7, 2005 and Jones's letter stating

that Silverstone would have to comply with current ordinances was sent in

August 2006.  The First, Sixth, and Seventh Circuits have noted that timing and

context are relevant to the similarly-situated inquiry.  Specifically, the First

Circuit stated:

> In the land-use context, timing is critical and, thus, can supply an
> important basis for differential treatment.... [C]ourts must be
> sensitive to the possibility that differential treatment-especially
> differential treatment following a time lag-may indicate a change
> in policy rather than an intent to discriminate. Consequently, the
> most reliable comparisons are likely to be from roughly the same
> time frame.

Cordi-Allen v. Conlon, 494 F.3d 245, 253 (1st Cir. 2007) (internal citation

ommitted); see also Taylor Acquisitions, L.L.C. v. City of Taylor, 313 Fed.

Appx. 826, 836-37 (6th Cir. 2009) (noting that "the election of a new mayor

and a new City Council-with new priorities-belies any assertion that Plaintiff

and the prior developers were similarly situated"); Purze v. Vill. of Winthrop

Harbor, 286 F.3d 452, 455 (7th Cir. 2002) (noting that individuals were not

similarly situated where they submitted plat requests at different time period

and had the requests granted by different and previous boards).  In Griffin

Industries, the Eleventh Circuit has also noted that variations in both citizen

24

complaints and pressure from politicians are relevant in the similarly-situated

determination.  496 F.3d at 1207.

Defendants' Motion for Summary Judgment [121] as to Count III of

Plaintiff's Complaint is **GRANTED**.

D.      Plaintiff's Fifth Amendment Claim

Defendants filed a pre-answer Motion to Dismiss [7] alleging that none

of the Plaintiff's claims were ripe for adjudication because Plaintiff had failed

to exhaust state remedies.  Plaintiff in its Response to Defendants' Motion to

Dismiss [8] admitted that its Fifth Amendment claim was not ripe for

determination because it had not yet exhausted state procedures.  (Dkt. No. [8]

at 3 (citing Eide v. Sarasota County, 908 F.2d 716, 720-21 (11th Cir. 1990)

("The landowner must obtain a final decision regarding the application of the

zoning ordinance or regulation to his or her property and utilize state

procedures which provide for obtaining just compensation.")))  Nonetheless,

Plaintiff requested that the Court stay the Fifth Amendment claim and not

dismiss the other claims, to prevent the running of the statute of limitations on

the remaining claims.  (Id. at 4).

The Court denied Defendants' Motion to Dismiss [7], finding that Plaintiff's substantive due process and equal protection claims were ripe, but stayed Plaintiff's Fifth Amendment claim until its state court proceeding was resolved.[8]  (Order of Oct. 1, 2008, Dkt. No. [11]).  Having granted Defendants' Motion for Summary Judgment [121] on Plaintiff's substantive due process and equal protection claims, there is no longer a reason to stay Plaintiff's Fifth Amendment claim.  Since that claim is not yet ripe for determination, dismissing it does not pose any statute of limitations concerns.  Therefore, Count I of Plaintiff's Complaint [1] is **DISMISSED WITHOUT PREJUDICE**.  Count IV seeks punitive damages against Defendants in their individual capacities.  Having granted summary judgment on Counts II and III and dismissed Count I, there is no basis on which Plaintiff can recover punitive damages.  Count IV is also **DISMISSED WITHOUT PREJUDICE**.

---

[8] Plaintiff noted that "an equal protection claim is ripe upon showing that the governing authority made a final decision regarding the property," and maintained that its equal protection claim was ripe for determination.  Plaintiff has since admitted that no final decision was made in regards to the Silverstone development, resulting in the Court's determination in Section I.C. *supra,* that Plaintiff's equal protection claim is not ripe.

26

**II.     Remaining Motions**

    A.     <u>Defendants' Motions</u>

Having granted Defendants' Motion for Summary Judgment [121],

Defendants' Motion to Compel Discovery [81-1] and Defendants' Second

Motion to Compel Discovery [109-1] are **DENIED AS MOOT**.[9]  Additionally,

Defendants' Motion for Attorneys' Fees [81] and Defendants' Second Motion

for Attorneys' Fees [109] are **DENIED**.

    B.     <u>Plaintiff's Motions</u>

Plaintiff's Motion for Extension of Discovery [112] seeks to extend the

discovery period by an additional four months to allow the parties to resolve

outstanding discovery disputes.  Count II of Plaintiff's Complaint [1], the

substantive due process claim, fails because it is barred by the applicable statute

of limitations.  Count III, setting forth Plaintiff's equal protection claim, fails

because it is not yet ripe for adjudication in this Court and because Plaintiff has

failed to identify adequate comparators.  Extension of discovery to resolve the

disputes outlined in Plaintiff's Motion cannot produce any evidence to change

---

    [9]Also, some of the issues raised in the motions were previously resolved by the
Court in telephone conferences with counsel.

the outcome of the Court's ruling on Counts II and III of Plaintiff's Complaint [1].  Therefore, Plaintiff's Motion for Extension of Discovery [112] is **DENIED**.

Plaintiff's Motion to Quash [114] the subpoena duces tecum directed to Leon Bridges is **GRANTED**.  Given the Court's holding on Defendants' Motion for Summary Judgment [121], further deposition testimony of Mr. Bridges is unnecessary.

## Conclusion

For the aforementioned reasons, Defendants' Motion for Summary Judgment [121] is **GRANTED** as to Counts II and III of the Complaint.  Counts I and IV of the Complaint are **DISMISSED WITHOUT PREJUDICE**. Defendants' Motion to Compel Discovery [81-1] and Defendants' Second Motion to Compel Discovery [109-1] are **DENIED AS MOOT**.  Defendants' Motion for Attorneys' Fees [81-2] and Defendants' Second Motion to for Attorneys' Fees [109-2] are **DENIED**.  Defendants' Motion for a Hearing [82] and Defendants' Second Motion for a Hearing [116] are **DENIED**.  Plaintiff's Motion for Extension of Discovery [112] is **DENIED**, and Plaintiff's Motion to Quash [114] is **GRANTED**.

28

AO 72A
(Rev.8/82)

**SO ORDERED**, this  30th  day of April, 2010.


RICHARD W. STORY
UNITED STATES DISTRICT JUDGE